UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:18-CR-04117-RK-2 |
| ) | |
| CLINT TRAVIS RODGERS, ) | |
| ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM

COMES NOW Defendant Clint Travis Rodgers ("Defendant" or "Rodgers"), by and through undersigned counsel, and hereby files the following memorandum for sentencing:

### I.  BACKGROUND

On October 12, 2021, Defendant Rodgers pleaded guilty to a one-count Substitute Information that charged Criminal Infringement of Copyright, in violation of 18 U.S.C. § 2319(b)(3) and 17 U.S.C. § 506, which plea has been accepted by this Court. *See* Presentence Report ("PSR") ¶ 1, 3

The 2021 Guidelines Manual was used to determine Defendant's offense level, pursuant to §1B1.11(a). PSR ¶ 22. As to the count of conviction, for Criminal Infringement of a Copyright, the guideline for a violation of 18 U.S.C. § 2319(b)(3) is U.S.S.G. §2B5.3. *Id*. at ¶ 23. Defendant accepted responsibility for the offense conduct by entering a timely plea of built, thus preventing the expense of a trial and qualifying for an offense level reduction of 3 (three), pursuant to §3E1.1(a). *Id*. at ¶ 24. Following the reduction for acceptance of responsibility, the PSR calculates Defendant's Total Offense

1

Level to be 23 (twenty-three), which is consistent with the agreement of the parties. *Id*. at ¶ 33.

Based on a total offense level of 23 and a criminal history category of I, the guideline imprisonment range is 46 months to 57 months. PSR ¶ 61. However, the statutorily authorized maximum term of imprisonment is one year, pursuant to 18 U.S.C. § 2319(b)(3) and 17 U.S.C. § 506. *Id*. at ¶ 60. Because the maximum term of authorized imprisonment of one year is less than the minimum of the applicable guideline range, the guideline term of imprisonment is, therefore, 12 (twelve) months, pursuant to U.S.S.G. §5G1.1(a). *Id*. at ¶ 61. Defendant respectfully suggests that a sentence of probation here will best serve the statutory purposes of sentencing.

## II. SENTENCING RULES

Title 18 U.S.C. § 3553(a) requires this Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. There are four purposes of sentencing and six factors to consider in connection with them. The guidelines are only one factor to consider and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Thus, this Court may not presume a sentence within the guideline range as reasonable. *See Rita v. United States*, 551 U.S. 338, 351 (2007). Nor may it presume a sentence outside the guideline range unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Furthermore, this Court may not require "extraordinary circumstances" to justify a sentence below the guidelines nor "use a rigid mathematical formula to determin[e] the strength of the justification required for a specific sentence." *Id.* at 47. These rules apply regardless of whether the guideline derives from the United States Sentencing Commission ("the Commission") or

a policy determination of Congress. *See Kimbrough*, 552 U.S. at 109-10.

The purposes of sentencing are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(A)-(D). "The §3553(a)(2)(a) consideration is the "just deserts" concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly."). *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing S. Rep. No. 98–225, at 75–76, 1984 U.S.C.C.A.N. 3258–59).

The factors to consider in connection with the purposes of sentencing are: (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the kinds of sentences available; (C) the guidelines promulgated by the Sentencing Commission; (E) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (F) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(1)-(7).

### III. DISCUSSION OF 18 U.S.C. §3553(a) FACTORS

#### A. Analysis of the 18 U.S.C. §3553(a)(2) Purposes of Sentencing

Here, the requested sentence of probation would meet the statutory purposes of sentencing for several reasons. First, Defendant poses a highly reduced risk of recidivism (*See* Section III.D below), which bears on just punishment, deterrence and the need to protect the public from further crimes of the defendant. Second, the nature of Defendant's

3

involvement in the offense was largely passive in nature, as reflected in his plea to a misdemeanor offense, which bears on the sentencing purposes of the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* Section III.C below. Finally, Defendants history and characteristics, including his history as a college graduate and business owner, and his role as caregiver to his children, in a case where his wife and co-Defendant was more actively involved in the offense of conviction and faces a more severe sentencing guideline range of punishment (See Sections III.B. and III.E., below), all bear significantly on the reduced need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in a correctional facility, and suggest that a non-custodial sentence may be the ideal setting to meet that purpose of sentencing.

### B. Rodgers' History and Characteristics

Defendant Clint Travis Rodgers was born on March 5, 1973, in Kansas City, Missouri, to Linda and Curtis Rodgers. PSR ¶ 43. His parents remained married until the death of his mother in 2003, while his father died from health complications in 2020. *Id*. Defendant did not suffer any abuse or neglect through his childhood and upbringing. *Id*.

Rodgers has been married to his wife, Tabitha Nicole Rodgers, since July of 2005. PSR ¶ 45. The two have a good marriage and remain supportive of each other. *Id*. The couple has four children together, who range in age from 6 to 15. *Id*. The children are aware of the instant offense and maintain good relationships with Defendant. *Id*.

Rodgers, his wife, and children reside in Hallsville, Missouri, and Defendant would return to this address following any term of imprisonment. PSR ¶ 46.

Defendant graduated from Platte County RIII High School on June 1, 1991, and

attended Missouri Western State University, Maple Woods Community College, Truman State University, and Moberly Area Community College, all in Missouri, from 1992 to 1994. PSR ¶¶ 52-53. He then transferred to Baylor University in Waco, Texas, where he earned a bachelor's degree in education on December 20, 1997. *Id*.

Defendant and his wife own two businesses. PSR ¶ 54. The first is Full-Service Web Design, LLC, which has been registered with the State of Missouri since November 17, 2010, and is run from their home. *Id*. The second is Missouri Home Appliance, LLC, which has been registered since April 24, 2018, is located in Columbia, Missouri, and operates under the name "Discount Appliance." *Id*.

### C. The Nature and Circumstances of the Offense

Defendant pleaded guilty to a misdemeanor offense of copyright infringement. PSR, ¶¶1, 60, 62. Defendant Rodgers was a substantially passive participant in the criminal conduct, and Rodgers's wife, Tabitha, conducted the day-to-day operations of the business. PSR ¶ 14.

### D. Defendant Rodgers Poses a Reduced Risk of Recidivism

United States Sentencing Commission data support the conclusion that Defendant Rodgers poses a reduced risk of recidivism, as compared with other offenders, and suggest that a sentence variance that minimizes any sentence of incarceration is appropriate in this case. *See e.g.,* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 16 (May 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism"). The criminal history measure of the guidelines

estimates the likelihood of recidivism based on two offender characteristics: prior convictions and prior terms of incarceration. *See* U.S.S.G. §4A1.1 The United States Sentencing Commission's 15-year report, however, concludes that the measure's predictive power would improve if it incorporated additional offender characteristics. *See Measuring Recidivism* at 16.

Recidivism rates decline consistently as the defendant's age increases. *Id.* at 12, 28. Offenders between 21 and 25 years old recidivate at a rate of 31.9%. *Id.* at 28. In comparison, offenders with a criminal history category I above the age of 50 recidivate at the rate of 6.2%. *Id.* Even within category I, recidivism rates differ greatly between those with one criminal history point (22.5%) and those with zero (11.8%). *Id.* at 23. Defendant York is currently 49 years old and has zero criminal history points. PSR ¶¶ 43, 38.

Marital status also correlates with recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have legally married or are divorced recidivate at the same rate of 9.8%, while never married offenders do so at a rate of 22.7%. *Id.* at 29. Defendant Rodgers is married. PSR ¶ 45.

Educational attainment correlates with lower recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have not graduated from high school recidivate at a rate of 21.3%. *Id.* at 29. Those who have graduated college recidivate at just 7.1%. Those who have some college recidivate at a rate of 13.9%. *Id.* Defendant Rodgers obtained his bachelor's degree in education on December 20, 1997, from Baylor University in Waco, Texas. PSR ¶ 53.

Additional United States Sentencing Commission data support the conclusion that, as a first offender with no prior contacts with the criminal justice system, Defendant
6
Case 2:18-cr-04117-RK   Document 98   Filed 06/27/22   Page 6 of 10

poses a further reduced risk of recidivism, as compared with other category I offenders, and suggest that a sentencing variance that minimizes Defendant's potential sentence of incarceration is appropriate in this case. *See e.g.*, U.S. Sentencing Comm'n, *Recidivism And The "First Offender"* (May 2004), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (hereinafter "*First Offender Report*"); *United States v. Tomko*, 562 F.3d 558, 571 (3d Cir. 2009) (upholding a sentence of one year home detention, restitution, community service, and a fine for tax evasion instead of the Guideline's 12-18-month sentence recommendation because of defendant's negligible criminal history, employment record, community ties, and extensive charitable works). The Guidelines deem "first offenders" generally less culpable and less likely to re-offend than all other offenders. *See First Offender Report* at 1. The Guidelines broadly define "first offenders" as offenders who have no prior convictions or incarcerations. *Id*; *see also* U.S.S.G. §§ 4A1.1; *See also* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev. 19, 24 (2003). The Commission has recognized, however, that consideration of additional factors will better identify those first offenders who prove *least* culpable, *least* likely to re-offend, and therefore *most deserving* of the leniency recommended by 18 U.S.C. § 994(j); *First Offender Report* at 1. In an ongoing effort to do so, the Commission divided "first offenders" with no criminal history points into three categories: those with (A) no prior arrests, (B) prior arrests but no prior convictions, or (C) prior convictions counted under U.S.S.G. § 4A1.2(c)(2) only. *Id.* at 5. It then collected and analyzed data about the

characteristics of offenders in each of the three categories. *See id.* It concluded that:

> From both culpability and recidivism risk perspectives, group A offenders, with no prior arrests, most strongly meet the conceptual definition of the first offender category. Offenders in group A have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate, 6.8%, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.

*Id*. at 17. The Commission noted it was important that "the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). Defendant Rodgers has no history of an arrest prior to commission of the instant offense, so he falls within group A—first offenders who are least likely to reoffend. PSR ¶ 41.

These factors indicate that the Defendant poses a low risk of recidivism and, as such, is a good candidate to receive a sentence of probation or a sentence that minimizes any term of incarceration, because such a sentence would not be necessary to achieve the purposes of sentencing.

### E. Defendant Rodgers' Responsibilities in Raising Young Children Are Properly Considered Here

Courts have recognized the defendant's status as a primary care giver as a potential mitigating factor warranting departure or downward variance from the sentencing guidelines. *See, e.g, U.S. v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (sentence of 1 year and 1 day for a man who possessed with intent to distribute 100 grams of heroin, despite a guideline range of 46-57 months, based on his long work career, community support, lack of a criminal record, and responsibilities as sole

supporter of an 8-year-old son and elderly parents, which reduced the likelihood he would re-offend). Courts especially consider a defendant's circumstance as the primary care giver of a young child, whose presence is essential to the child's development. *See, e.g.*, *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (affirming a downward variance to probation where a prison sentence would have negatively affected the defendant's disabled nine-year-old son because, despite father's involvement in son's life, defendant was in a better position to provide the child care and support); *United States v. Haidley*, 400 F.3d 642, 645 (8th Cir. 2005) (family circumstances, including two young children at home, may be considered under § 35539(a)); *U.S. v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005) (on remand of bank fraud case, district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); *U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (district court had discretion to depart downward 4 levels for extraordinary family circumstance that defendant's 8-year-old son had lost his father and would be losing his mother, his primary care giver, for a substantial amount of time); *U.S. v. Crocker*, 2007 WL 2757130 (D. Kan. Sept. 30, 2007) (downward variance granted based on advisory Guidelines and several factors, including defendant's responsibilities as a parent).

      Rodgers and his wife have four children. All four children are minors, at ages 15, 13, 11, and 6. Two of them are not yet teenagers. All of them currently require a primary caregiver, and will continue to require one for some time. Rodgers's wife and co-Defendant faces felony charges for the same criminal conduct, and faces a much more substantial guideline range of imprisonment. Sentencing both Rodgers and his wife, Defendant Tabitha Rodgers, to custodial punishment would deprive their four children of

a primary caregiver for a substantial period. That undue effect on their children is properly considered in sentencing Defendant Rodgers here.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully suggests that a sentence of probation would best serve the statutory purposes of sentencing.

Respectfully submitted,

ROGERS SEVASTIANOS & BANTE, LLP

By: */s/ John P. Rogers*
JOHN P. ROGERS, #38743MO
Attorney for Defendant
120 S. Central Avenue, Suite 160
Clayton, Missouri 63105
(314) 354-8484/Facsimile (314) 354-8271
Email: jrogers@rsblawfirm.com

## CERTIFICATE OF SERVICE

By signature below, I hereby certify that on June 27, 2022, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorney Jim Y. Lynn, Jr.

*/s/ John P. Rogers*

10
Case 2:18-cr-04117-RK   Document 98   Filed 06/27/22   Page 10 of 10